**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR10-8216 PCT-DGC |
| Plaintiff, | |
| v. | **ORDER** |
| Sheila Ruth Young, et al. | |
| Defendants. | |

The Court held a final pretrial conference on January 22, 2013.  This order will reflect matters resolved at the conference.

1.    The Court confirmed that it will excuse for hardship those jurors listed in the order dated January 10, 2013.  The Court added juror 165 to this list.  The Court also heard and granted a number of challenges for cause based on juror questionnaires.  The jurors excluded for cause will be identified in the minute entry for the final pretrial conference.

2.    The Court addressed the government's motion in limine (Doc. 319) and entered the following rulings.

a.    With respect to evidence of Defendants' religious beliefs, the Court granted the motion with respect to the religious name on one of the checking accounts used by Defendants.  The Court did so on the basis of the government's statement that it would not present evidence of the name.  The Court denied the motion with respect to direct evidence that Defendants' good faith belief in the legitimacy of this tax refund

program was based in part on prayer.  Such evidence goes to Defendants' intent.  The Court will exercise care to ensure that the prayer evidence does not morph into evidence/ argument that Defendants are religious and therefore would not have committed a crime. The Court denied the motion with respect to evidence that Defendants' 10% charge on refunds was viewed by them as a form of tithing.  The Court also denied the motion with respect to Mr. Young's diagnosis with delusional disorder and the fact that he took IRS refunds to be a heavenly indication that the refunds were legitimate.  These points will be presented as part of Dr. Lanyon's testimony, discussed below.

b. With respect to evidence about the law that applies to tax refunds, the Court denied the government's motion with respect to evidence of legal research upon which Defendants' relied in concluding that their tax refund approach was legitimate.  This evidence necessarily will be limited to legal research or analysis conducted before Defendants took actions charged in this case.  The Court cannot conclude, at this stage, that such evidence would be inadmissible.  If the evidence has a tendency to show that Defendants believed that the tax refunds prepared for their clients were not false or fraudulent, it will go directly to the knowledge element of this crime. But the government need not prove that Defendants knew they were committing a crime. Thus, legal evidence simply showing that the refunds were not criminal, rather than showing that the claims in the refunds were not false, may be irrelevant.  The Court will make this determination at trial.  If legal materials are admitted, the Court will instruct the jury that the materials are to be considered only as they relate to Defendants' state of mind and not as evidence of what the law requires.

c. With respect to evidence of Defendants' beliefs, the Court granted the motion with respect to the testimony of any third-party witness concerning what Defendants believed.  Such testimony would be speculative.  The Court also granted the motion with respect to any suggestion that a witness believed his or her refunds were lawful and therefore does not fear prosecution from the government.  The Court concluded that the very marginal relevancy of such testimony would be substantially

outweighed by the likelihood of unfair prejudice.  The Court denied the motion with respect to testimony by witnesses about actions taken by Defendants (that the defense will argue showed Defendants' good faith), testimony concerning Defendants' reputation for honesty and truthfulness (to the extent Defendants' credibility is at issue), and evidence about legal research and analysis witnesses conducted and communicated to Defendants before alleged illegal conduct charged in the indictment.  The latter category of evidence may be relevant to Defendants' knowledge.

d.      With respect to general tax protestor literature, the Court granted the government's motion.  Such literature is hearsay and irrelevant.  The Court denied the motion with respect to letters Defendants wrote to the IRS.  The Court cannot conclude at this stage that such letters would constitute hearsay – they may be admitted for purposes other than to prove the truth of the matter asserted.  Nor could the Court conclude at this stage that such letters would be irrelevant.  The Court must rule on those matters as they arise during the trial.

3.      The Court considered Defendants' motion in limine (Doc. 317) and reached the following conclusions:

a.      The Court denied the motion with respect to evidence of hardship suffered by Defendants' clients and evidence of civil penalties and liens imposed by the IRS on Defendants' clients.  Evidence that clients were assessed penalties and liens and reported that fact to Defendants in the middle of the 1099 program, and that Defendants nonetheless continued the program, will be relevant on the issue of knowledge.  In addition, it is possible that assessment of penalties and liens may prove relevant on the question of materiality of alleged false statements.  Penalties and liens imposed on witnesses, as well as hardship suffered by witnesses, may also become relevant to their credibility and bias.  Because the Court cannot conclude at this stage that such evidence would be inadmissible, the motion was denied with respect to these issues.

b.      The Court granted the motion with respect to the civil injunction entered against Defendants, a motion to quash filed by Defendants, any argument that the

jurors will face an increased tax burden because of Defendants' conduct, and evidence of criminal convictions from other cases. The government did not oppose the motion on these issues.

       c.     With respect to evidence of other "tax schemes," the Court granted the motion with respect to the "worthless securities scheme" described by the government at the hearing. The Court denied the motion with respect to actions Defendants took with respect to 1099 refunds, even if the actions occurred before the events alleged in the indictment, and with respect to the fact that Defendant DeFoor failed to pay taxes in earlier years.

       d.     With respect to evidence that Defendants "read" people to see if they would participate in the scheme, the Court granted the motion with respect to evidence about what was in Defendants' minds when they selected participants. The Court denied the motion with respect to evidence of how Defendants presented the 1099 program to clients, the fact that only selected clients were approached to participate in the program, and communications between Defendants and such clients regarding the program.

       4.     The Court addressed the government's motion in limine to exclude the trial testimony of Dr. Richard Lanyon. Doc. 320. For reasons stated on the record, the Court denied the motion with the exception of three narrow categories of testimony: evidence that Mr. Young lacked a rational understanding of what he was doing in regard to the charges against him, evidence that Mr. Young lacked the mental state to commit the alleged crimes, and evidence concerning the sincerity of Mr. Young's religious beliefs or his credibility. The first two categories of evidence would violate Federal Rule of Evidence 704(b), and the third category is beyond the expertise of Dr. Lanyon. The Court denied the *Daubert* motion to exclude Dr. Lanyon, concluding that his qualifications, methodology, and diagnosis are not inadmissible under Rule 702. The Court also concluded that Dr. Lanyon can describe statements Mr. Young made to him about Mr. Young's religious beliefs in order to explain Dr. Lanyon's diagnosis. Fed. R. Ev. 703. If Dr. Lanyon's description of Mr. Young's statements wanders beyond an

explanation of Dr. Lanyon's diagnosis, it may become objectionable.  As a general matter, evidence of religious beliefs may not be presented in order to suggest that Defendants would not have committed a crime.  To the extent Dr. Lanyon testifies about statements Mr. Young made regarding his religious beliefs, the Court will entertain a limiting instruction which makes clear to the jury that the evidence of Mr. Young's religious beliefs is presented only to assist them in evaluating the testimony of Dr. Lanyon, and for no other purpose.  The Court also denied the motion with respect to Dr. Lanyon's testimony that certain events constituted intermittent reinforcement of Mr. Young's delusion.  The Court concluded that this testimony was sufficiently founded in Dr. Lanyon's expertise and supported by the facts he considered.

5.     Finally, the Court was asked by the government to review a video clip Defendants propose to present during their opening statement to the jury.  The clip consists of excerpts from various news reports regarding the 2008 financial crisis, including the drop of the stock market, mortgage problems, and the government's efforts to prevent a financial collapse.  The news clips to bank bailouts, bankruptcies of large institutions, dramatic drops in stock markets here and abroad, and video images of newspaper clippings, charts showing dramatic drops in stock value, and homes in foreclosure.  For several reasons, the Court will not permit Defendants to show the video during their opening statement.

First, the video contains hearsay.  It consists entirely of out-of-court declarations by newscasters, political commentators, and newspapers that are presented for the truth of the matters asserted – that the United States and the world faced serious financial troubles in 2008.

Second, the video clip is inherently argumentative, portraying Defendants' view of the severity of the financial crisis that occurred in 2008.  Many of the news clips contain statements of alarm by newscasters or politicians, as well as predictions of dire consequences.  The general tone of many of the clips is that the United States is facing an unprecedented financial collapse and disaster has arrived.

Third, some statements in the video clip are inflammatory.   These include references to scams preying on struggling homeowners, golden parachute bonuses for CEOs, toxic assets, "immense outrage" from citizens, excessive government involvement in business and financial affairs, and assertions that "we are in the last days of this country's surviving."

Fourth, portions of the video clip cannot be attributed to any particular news sources.  At times, voices are heard while pictures are shown, with no indication of the source of the voices or the pictures.  At other times, green dollar signs float across the screen.  The Court and jury would be unable to determine the source of many of the images and assertions made during the video clip.

**IT IS ORDERED:**

1.     The government's motion in limine (Doc. 319) is **granted in part and denied in part** as set forth above.

2.     Defendants' motion in limine (Doc. 317) is **granted in part and denied in part** as set forth above.

3.     The government's motion in limine to exclude the trial testimony of Dr. Richard Lanyon (Doc. 320) is **granted in part and denied in part** as set forth above.

4.     Defendants may not use the video clip during opening statements. Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to begin on 10/5/2012.

Dated this 23rd day of January, 2013.

_____
David G. Campbell
United States District Judge